## INTEREST OF A LIFE TENANT IN A STOCK DIVIDEND.

Circuit Court of Summit County.

CHARLES B. RAYMOND, W. E. SLABAUGH AND MARY F. PERKINS, AS EXECUTORS OF THE WILL OF GEORGE F. PERKINS, DECEASED, v. MARY F. PERKINS ET AL.

Decided, December 2, 1912.

*Wills—Construction of—Stock Dividends on Stock Belong to Remainderman.*

1. Where a will gives the income from an estate to a certain person for life, a stock dividend issued upon certain stocks belonging to the estate is capital and not income and does not go to the life-tenant, but to the legatees in remainder.
2. A stock dividend does not increase the interests of the shareholders in the property of a corporation; it is only new evidence of their interests.

*Francis Seiberling* and *J. B. Huber*, for Mary F. Perkins and Mary P. Raymond.

*A. H. Cummins,* for L. D. Brown.

NIMAN, J.; WINCH, J., and MARVIN, J., concur.

This action was begun in the court of common pleas by the plaintiffs, as executors of the will of George T. Perkins, deceased, to secure a construction of said will on the matters hereafter indicated.

The principal question submitted to the court relates to the disposition to be made under the will of $80,000 par value of preferred stock of the B. F. Goodrich Company, received by the executors in the form of a stock dividend on 4,000 shares of the common stock of said company held by them under the will.

George T. Perkins, the testator, was a resident of the city of Akron, Ohio. He died on the 8th day of September, 1910, leaving surviving him Mary F. Perkins, his widow, Mary B. Raymond, his daughter, and certain grandchildren, who are the children of Mary B. Raymond. By the terms of the will and a codicil thereto, both duly admitted to probate in the Probate Court of Summit County, Ohio, the widow became entitled to receive, dur-

ing her lifetime, the income on the "rest and residue" of the testator's property left after certain portions thereof were otherwise disposed of and, upon the widow's death, the daughter, if she survives her mother, is to receive such income during her lifetime. The words used in the will, descriptive of the income, are: "Use, profit and income;" and those used in the codicil are: "Income, profits and proceeds."

Upon the death of both the testator's widow and daughter provision is made for the disposition of the rest and residue of the testator's estate by dividing the same among the testator's grandchildren.

Included in the residuary estate are the four thousand shares of common stock of the B. F. Goodrich Company, of the par value of $100 per share, of which the stock dividend in question was received by the executors.

It appears from the agreed statement of facts before us that the B. F. Goodrich Company is a corporation, organized under the laws of Ohio in 1880 for the purpose of manufacturing rubber goods; that the company enjoyed great prosperity; that it has been the policy of the company since it was organized to use a large proportion of its earnings for increasing its plant and working capital and developing its business; that the surplus and profits of the company not used for cash dividends have been put into the business and from time to time stock dividends have been declared and charged against the surplus and profits; that the original capital stock was $100,000, which was increased by the sale of additional stock and the issuance of stock dividends so that in the year 1905 the authorized and outstanding capital stock was $5,000,000; that in 1906 the capital stock was increased to $10,000,000 and $5,000,000 thereof distributed among stockholders in the form of a stock dividend, out of the accumulated surplus and profits of the company; that in 1910 the capital stock was increased to $20,000,000, the increase of $10,000,000 being in cumulative preferred stock; that in October, 1910, a stock dividend of twenty per cent. was paid in the preferred stock of the company to the holders of common stock and charged against surplus profits; that in November, 1910, after the payment of this stock dividend, there remained to the company a

surplus and profit of $1,600,000; that on January 1st, 1912, the company had in its surplus and profit account $3,700,000; that on January 17, 1912, the company again declared a stock dividend of twenty per cent. upon its common stock, payable in preferred stock, and after the payment of $2,000,000 in this preferred stock dividend it still had remaining in its surplus and profit account $1,700,000.

Out of the stock dividend declared on January 17, 1912, the executors received on the common stock held by them $80,000 of preferred stock. It is this stock dividend that is in controversy in this action.

The question, therefore, presented to the court in construing the will is, whether the preferred stock dividend of January 17, 1912, or any part thereof, goes to the widow, Mary E. Perkins, one of the life tenants under the will, or whether such dividend belongs to the corpus of the trust estate and goes to the remaindermen.

In our opinion no part of this stock dividend belongs to the life tenant, but the whole should be treated as belonging to the corpus of the trust estate.

In the absence of bad faith, a corporation has power either to distribute its earnings among its stockholders, in the form of dividends, or to retain them and employ them in the conduct of the business as a part of its capital. Until distributed, such earnings are the property of the corporation and not of the stockholders.

The declaration and issuance of a stock dividend do not change the interest of stockholders in the corporate assets. Each stockholder has the same proportionate interest after the stock dividend is declared and paid, as before. As was said by Mr. Justice Grey in *Gibbons* v. *Mahon*, 136 U. S., 549:

"A stock dividend really takes nothing from the property of the corporation and adds nothing to the interests of the shareholders. Its property is not diminished and their interests are not increased. After such a dividend as before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are represented by the whole number of shares and the proportional interest of each shareholder remains the same. The only change is in the evidence

which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones.''

The testator must be deemed to have had in contemplation the power of the corporation to accumulate its earnings and employ them in the extension and improvement of its business. When he made provision in his will for the payment of the income on his investment in the stock of the B. F. Goodrich Company, his intention with respect to a stock dividend, such as is involved here, must be arrived at by considering that he acted with the lawful power of the corporation to appropriate its earnings to the enlargement of the business in mind.

The question before us has been considered in many other jurisdictions. There is great conflict in the views of the different courts which have considered the matter.

In the case of *Miller et al* v. *Miller et al,* arising in Cuyahoga county, and just decided by this court, we have considered some of these conflicting decisions and have discussed the principles involved. We therefore deem it unnecessary, in this opinion, to review the authorities, or to discuss at any considerable length the principle which we conceived should control in deciding the question before us.

The language in *Bryan* v. *Aikin,* 82 At. Rep., decided by the Court of Chancery of Delaware, April 1st, 1912, where the rule which we adopt here was approved, expresses our view. On page 823 in the opinion it is said:

''The rule here adopted has merit, not only as being concededly simple and direct, but represents a logical conclusion from established premises. It gives weight to the action of the company, because the corporation has the power to settle the premises upon which the question is to be decided. It avoids an investigation into the transactions of the company to determine the period within which the earnings were made and on numerous occasions it has been pointed out by courts which have rejected the apportionment rule of Pennsylvania that this is always troublesome, usually expensive, seldom satisfactory and sometimes practically impossible, as in the case of a foreign corporation. Of course, these references to some of the difficulties of adopting a rule as to apportionment according to when the earn-

ings were made in whole or part, during the life of the testator, or wholly or partly thereafter, do not apply in the case at bar, because it affirmatively appears that all the earnings represented by the stock dividend in question were made since the life tenancy began.  Still, a plain, simple rule is sought, and one that is workable in all cases, to prevent controversies and to guide in the administration of other estates respecting other distributions of capitalized earnings.  The rule has been criticized because it gives too much weight to the action of the corporation, but this is a necessary result of the character of the investment and of the necessary power of the corporation respecting the management of the assets of the company.  The rule here adopted is clear, easily applied and logical, and as fair to present interests as the nature of the case will permit, in view of the corporate control of corporate property.''

Another question propounded in the petition is whether the costs and expenses of a certain former suit brought to obtain a construction in certain respects of the will of the testator should be paid by the plaintiffs out of the income, profits and proceeds of the trust estate, or out of the body or corpus of the trust fund.

No argument has been devoted to this feature of the petition and we will devote no time to its consideration, beyond indicating that the same direction will be entered as to this matter that was given in the court of common pleas.